**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JOSEPH DIBLANCA and AUTO'S BY
JOSEPH INC. d/b/a JOEY'S OF MILTON,**

                                  **Plaintiffs,**

    vs.                                                  1:13-cv-1579
                                                                 (MAD/RFT)

**TOWN OF MARLBOROUGH, THE TOWN OF
MARLBOROUGH POLICE DEPARTMENT,
THE TOWN OF MARLBOROUGH BUILDING
DEPARTMENT, POLICE CHIEF GERALD COCOZZA,
SGT. JUSTIN PASCALE, POLICE OFFICER FREDERICK
EBERHARD, THOMAS CORCORAN, ABSOLUTELY
AUTOMOTIVE INC., ABSOLUTELY AUTO BODY, INC.,
and TOWN LINE AUTO CENTER,**

                                  **Defendants.**
_____

**APPEARANCES:**                                       **OF COUNSEL:**

**MOSES & SINGER, LLP**                    **DAVID A. LACKOWITZ, ESQ.**
405 Lexington Avenue, 12th Floor         **ROBERT S. WOLF, ESQ.**
New York, New York 10174
Attorneys for Plaintiffs

**MORRIS DUFFY ALONSO & FALEY**       **CARL S. SANDEL, ESQ.**
2 Rector Street, 22nd Floor
New York, New York, 10008
Attorneys for Defendants

**ISSEKS AND SMITH**                               **ROBERT N. ISSEKS, ESQ.**
6 North Street
Middletown, New York 10940
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    On December 23, 2013, Plaintiffs commenced this action pursuant to 42 U.S.C. § 1983,

alleging that Defendants retaliated against them for exercising their First Amendment rights. *See* Dkt. No. 1 at ¶ 51. The complaint also contains several state-law causes of action, including unjust enrichment, harassment, tortious interference with prospective economic advantage, and *prima facie* tort. Plaintiffs seek a permanent injunction, as well as compensatory damages, punitive damages, and attorneys' fees. *See id.* at ¶¶ 56-81.

Currently before the Court is Defendants' motion to dismiss Plaintiffs' complaint for failure to state a claim upon which relief can be granted.

## II. BACKGROUND[1]

Plaintiff Joseph DiBlanca is the principal of Auto's by Joseph, a towing company that operates in the Town of Marlborough (the "Town"). Auto's by Joseph has participated in the Town's statutory rotation for vehicle removal for approximately eight years. *See* Dkt. No. 1 at ¶ 1. The statutory rotation is intended to ensure that each licensed towing company within the Town receives an equal number of calls to remove vehicles. *See id.* The Town Police Department monitors the roster and is responsible for contacting whichever company is next in line for a vehicle removal. *See id.*

Around August of 2013, Plaintiff DiBlanca discovered that Police Chief Cocozza and Sgt. Pascale had obtained ownership interests in Auto's by Joseph's primary competitors, Absolutely Automotive Inc. and its affiliate Absolutely Auto Body, Inc. (collectively "AA"), and Town Line Auto Center ("TLAC"), which are both in the Town's towing roster. *See id.* at ¶ 2. Plaintiffs allege that as a result, Auto's by Joseph was frequently being skipped in the tow rotation and its calls were being diverted to AA and/or TLAC. *See id.* Plaintiffs further allege that Defendant

---

[1] This background is derived from the allegations in Plaintiffs' complaint.

2

Cocozza and Pascale's ownership interests in AA and TLAC violate the Code of the Town of Marlborough (the "Code"), which provides that "[n]o Town officer or employee shall have any interest, or engage in any business or transaction . . . which is in conflict with, or might reasonably tend to conflict with, the proper discharge of his or her duties in the public interest." *See id.* at ¶¶ 2, 25.

In response to being left out of the towing rotation, Plaintiffs claim that they began to exercise their First Amendment rights by complaining to the Town and the Town's Police Department about Defendants' alleged conflicts of interest and police misconduct. *See id.* at ¶ 3; Dkt. No. 11 at 6.[2] According to Plaintiffs, instead of rectifying the situation by refraining from further misconduct, the Town and Defendant police officers launched an attack on Plaintiffs to ultimately drive them out of business. *See* Dkt. No. 1 at ¶ 3.

On August 4, 2013, Plaintiff DiBlanca heard a call come in for a vehicle removal that belonged to him by virtue of the rotation system. *See id.* at ¶ 38. Auto's by Joseph was not called to the scene, so Plaintiff DiBlanca drove to the scene and began to take photographs. *See id.* At the scene, Plaintiff DiBlanca was approached by Defendant Officer Eberhard, who allegedly tried to search Plaintiff DiBlanca's vehicle without probable cause. *See id.* Defendant Eberhard then told Plaintiff DiBlanca that "the tow law means nothing to me," and that it was Eberhard's goal to "put you out of service." *See id.*

Similarly, on August 29, 2013, Plaintiff DiBlanca overheard that a vehicle removal was needed and it was his turn again according to the rotation system. *See id.* at ¶ 39. The vehicle that needed to be towed was a Dodge 2500 pickup truck that contained a trailer with a Bobcat

---

[2] To avoid confusion, whenever the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

3

loader on it. *See id.* According to Plaintiffs, Defendant Eberhard requested a heavy wrecker, which only AA possessed, to remove the vehicle, even though Plaintiff DiBlanca's truck was equipped to handle the removal of this type of vehicle. *See id.* The dispatcher rejected Defendant Eberhard's request and allowed Plaintiffs to tow the vehicle, but Plaintiff DiBlanca claims that Defendant Eberhard was hostile and told the other police officers to not abide by the towing rotation when Plaintiffs were next in line to be called. *See id.* at ¶¶ 39-40.

On November 27, 2013, Defendants Chief Cocozza and Sgt. Pascale were monitoring two checkpoints where numerous vehicles were towed and impounded. *See id.* at ¶ 42. Instead of using the radio to contact the tow trucks on the roster, Plaintiffs claim that the officers used their cell phones and called AA several times that night without once calling Auto's by Joseph. *See id.* Again, on November 30, Auto's by Joseph originally received a call from the police dispatcher of a three-car collision that needed a tow, but Plaintiff DiBlanca was subsequently put on hold and eventually told that he was not needed. *See id.* at 43. Plaintiff DiBlanca's sons drove to the scene and noticed that AA had been called and that the officers on the scene were Defendants Chief Cocozza and Sgt. Pascale. *See id.* at ¶ 43.

Furthermore, Plaintiffs claim that the Town's Police Department also enlisted Defendant Corcoran, the Building Inspector of the Town's Building Department, in their campaign against Plaintiffs. *See id.* at ¶ 45. According to Plaintiffs, Defendant Corcoran acknowledged that he was on a mission to discredit and harass Plaintiff DiBlanca. Plaintiffs claim that Defendant Corcoran assisted one of the principals of AA and TLAC to lodge a formal complaint regarding real property that Plaintiff DiBlanca owned in the Town of Lloyd. *See id.* at ¶ 46. Plaintiffs also claim that Defendant Corcoran has used threats and intimidation in an attempt to coerce Plaintiff DiBlanca to not disclose the Police Department's wrongful conduct. *See id.* at ¶ 48.

Plaintiffs assert that (1) the Town, the Building and Police Departments, the individual officers, and Thomas Corcoran retaliated against them for exercising their First Amendment rights; (2) AA, TLAC, and the individual officers were unjustly enriched; (3) all Defendants committed harassment; (4) the Police Department, the individual officers, AA, and TLAC committed tortious interference with prospective economic advantage; (5) all Defendants are liable for *prima facie* tort; and (6) they are entitled to injunctive relief against the Town, the Police and Building Departments, the individual officers, and Thomas Corcoran. *See id.* at ¶¶ 56-81.

In their motion to dismiss, Defendants argue that (1) Plaintiffs' First Amendment retaliation claim should be dismissed because Plaintiffs' speech is not protected; (2) the individual officers are entitled to qualified immunity; (3) the claim against the Town should be dismissed because Plaintiffs cannot establish municipal liability; (4) the Police and Building Departments are not proper Defendants to this lawsuit; (5) Plaintiffs' unjust enrichment claim should be dismissed because Plaintiffs have not conferred a benefit on Defendants; (6) Plaintiffs' harassment claim should be dismissed because harassment is not a cognizable common law claim; and (7) Plaintiffs' tort claims against the individual officers should be dismissed because they are highly speculative and not plausible. *See* Dkt. No. 9-1.

## III. DISCUSSION

### A. Standard of review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal

sufficiency, a court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

6

**B.     The Police and Building Departments**

Under New York State Law, "'a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence.'" *Polite v. Town of Clarkstown*, 60 F. Supp. 2d 214, 216 (S.D.N.Y. 1999) (quotation omitted).  As a result, municipal departments in New York are not amenable to suit.  *See id.* (citations omitted).  Accordingly, the Town of Marlborough Police and Building Departments are hereby dismissed as Defendants in this action.

**C.     First Amendment Retaliation**

For the purposes of a First Amendment retaliation claim, towing companies that have agreements with municipalities are deemed to be "public employees." *See White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1059 (2d Cir. 1993).  To prevail on a First Amendment retaliation claim, a public employee must prove that: "(1) his speech addressed a matter of public concern, (2) he suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action[.]" *Mandell v. County of Suffolk*, 316 F.3d 368, 382 (2d Cir. 2003).

In *White Plains Towing Corp.*, the plaintiffs were granted the exclusive right to towing referrals on a section of I-287 by the state police department.  *See White Plains Towing Corp.*, 991 F.2d at 1053.  The defendants received several complaints about the plaintiffs regarding their towing services, including overbilling vehicle owners, improperly refusing to release seized property, and abandoning a van on a stretch of I-287 after the plaintiffs were unable to sell the van for scrap metal.  *Id.* at 1053-54.  The plaintiffs continued to demand an increase in towing referrals, and when the police department terminated the plaintiffs' assignment, the plaintiffs argued that the termination was in retaliation because the owner of the towing company had

7

alleged that certain officers defamed him (a claim he quickly withdrew), and thus the termination violated his First Amendment rights. *Id.* at 1054, 1060. However, the Second Circuit found that "[t]he vast majority of [plaintiff's] communications to the State Police consisted simply of demands and complaints seeking an increase in towing referrals to [the plaintiff tow company]." *Id.* at 1060. The court further held that this speech "could not provide a basis for recovery" because it "stated private commercial grievances that [did] not appear to relate to any matter of political, social, or other concern to the community." *Id.*

In the present action, Defendants argue that, similar to *White Plains Towing Corp.*, Plaintiffs' speech does not address a matter of public concern. Contrary to Defendants' contentions, the Court finds that Plaintiffs' speech goes beyond mere commercial grievances and may be characterized as speech dealing with a matter of public concern. Although Plaintiffs complained about their personal financial interests being adversely affected, much of Plaintiffs' complaint contains specific factual allegations regarding police misconduct and conflicts of interest in the Town's Police Department. *See* Dkt. No. 1 at ¶¶ 30-35; Dkt. No. 11 at 11. Moreover, because the tow dispatch system is codified by the Town Code and Defendants Cocozza and Pascale are allegedly in violation of the Code because of their personal stake in AA and TLAC, this raises a genuine public concern that is more than a private personal grievance. *See* Dkt. No. 1 at ¶¶ 30-35.

Plaintiffs' allegations against Officer Eberhard and Building Inspector Corcoran also raise matters of public concern. Although Officer Eberhard does not have a personal stake in the towing companies, Plaintiffs' complaint sufficiently alleges that he is disregarding the tow law in an effort to retaliate against Plaintiffs for exercising their First Amendment rights. *See* Dkt. No. 1 at ¶ 3. His alleged statements that "I can call whoever I want," and "the tow law means nothing to

8

me" suggest that he is knowingly violating the Code that the Town police officers are required to follow. *See id.* As to Defendant Corcoran, Plaintiffs have alleged that in his capacity as Building Inspector, Defendant Corcoran encouraged government officials in the Town of Lloyd to charge Plaintiff DiBlanca with violations of the building code. *See* Dkt. No. 1 at ¶ 46. The complaint also alleges that Defendant Corcoran threatened Plaintiffs with unwarranted citations as a way to coerce Plaintiffs not to disclose the alleged misconduct occurring in the Town's Police Department. *See id.* at ¶ 48. Assuming Plaintiffs' well-pleaded allegations are true for the purposes of this motion, Plaintiffs' speech goes beyond mere commercial grievances and addresses matters of public concern.

Another element that Plaintiffs must prove to prevail on their First Amendment retaliation claim is to show a causal connection between the speech and the adverse employment action. *See Mandell*, 316 F.3d at 382. "'Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus.'" *Id.* at 383 (quotation omitted). Here, although Plaintiffs were being left out of the tow rotation before they lodged complaints, they have sufficiently alleged that after they began to exercise their First Amendment rights, Defendants launched a campaign to harass them and drive them out of business. *See* Dkt. No. 1 at ¶¶ 2-3. Defendant police officers allegedly became more hostile and took greater measures to avoid Plaintiffs' turn in the tow rotation after Plaintiffs started complaining about the police misconduct. *See id.* at ¶¶ 2-3, 40-44. This suggests that there is a causal connection between Plaintiffs' speech and the adverse employment actions taken against them.

Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' First Amendment

retaliation claim.

**D.   Municipal liability**

Defendants contend that Plaintiffs' claims against the Town should be dismissed because Plaintiffs cannot establish municipal liability. *See* Dkt. No. 9-1 at 9. Defendants argue that Plaintiffs have not identified any policy or custom of the Town that caused a constitutional violation. *See id.*

"Although municipalities are considered 'persons' for purposes of Section 1983, a local government such as [a] County . . . may not be held liable under Section 1983 unless the challenged action was performed pursuant to a municipal policy or custom." *Powers v. Gipson*, No. 04-CV-6338, 2004 WL 2123490, *2 (W.D.N.Y. Sept. 14, 2004) (citing *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978)). This is because "[m]unicipalities are not subject to Section 1983 liability solely on the basis of a *respondeat superior* theory." *Powers*, 2004 WL 2123490, at *2; *Harris v. Howard*, No. 08 Civ. 4837, 2009 WL 3682537, *2 (S.D.N.Y. Oct. 30, 2009) ("A municipality may not be held liable under Section 1983 on the basis of *respondeat superior*"). As a result, to demonstrate *Monell* liability, a plaintiff must allege a violation of constitutional rights by employees of the municipality and "(1) 'the existence of a municipal policy or custom . . . that caused his injuries beyond merely employing the misbehaving officer[s]'; and (2) 'a causal connection — an affirmative link—between the policy and the deprivation of his constitutional rights.'" *Harper v. City of New York*, 424 Fed. Appx. 36, 38 (2d Cir. 2011) (quoting *Vippolis v. Vill. Of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)) (internal quotation marks omitted); *see also Harris*, 2009 WL 3682537, at *2 ("In order to plead a claim under 42 U.S.C. § 1983 against a municipality, plaintiff must allege that a municipal policy or custom caused the deprivation of his

constitutional rights"). "A plaintiff may plead a municipal policy or custom by alleging: (1) a formal policy, promulgated or adopted by the entity; or, (2) that an official with policymaking authority took action or made a specific decision which caused the alleged violation of constitutional rights; or (3) the existence of an unlawful practice by subordinate officials that was so permanent or well settled so as to constitute a 'custom or usage,' and that the practice was so widespread as to imply the constructive acquiescence of policymaking officials." *Shepherd v. Powers*, No. 11 Civ. 6860, 2012 WL 4477241, *9 (S.D.N.Y. Sept. 27, 2012) (internal quotation marks omitted).

In the present matter, although Plaintiffs have not identified a formal policy that deprived them of any rights, they have sufficiently alleged that Chief Cocozza, in his capacity as Chief of Police of the Town's Police Department, took action and made specific decisions which allegedly violated their constitutional rights. *See* Dkt. No. 1 at ¶¶ 36-43. According to Plaintiffs' complaint, Chief Cocozza defied the tow law on several specific occasions to retaliate against Plaintiffs for exercising their First Amendment rights. *See id.* Since Chief Cocozza had policymaking authority on behalf of the Town, his alleged unconstitutional actions against Plaintiffs may be considered a municipal policy for the purposes of this claim.

Therefore, the Court denies Defendants' motion to dismiss all claims against the Town of Marlborough.

**E.     Qualified Immunity**

Defendants argue that the individual Defendants are entitled to qualified immunity. *See* Dkt. No. 9-1 at 9. Qualified immunity protects government officials from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a

11

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (holding that qualified immunity is not merely immunity from damages but also "immunity from suit"). "[T]he salient question [in determining qualified immunity] is whether the state of the law . . . gave [the defendants] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). As qualified immunity is an affirmative defense, the burden of pleading it falls on the defendants. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citations omitted); *see also Varrone v. Bilotti*, 123 F.3d 75, 78 (2d Cir. 1997) (holding that "defendants bear the burden of showing that the challenged act was objectively reasonable" (citation omitted)). The qualified immunity determination consists of two steps, which a court may consider in either order. *See Seri v. Bochicchio*, 374 Fed. Appx. 114, 116 (2d Cir. 2010) (citation omitted). The first step is to determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal and other citation omitted). The second is a determination of "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* (citation omitted). "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"[U]sually, the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can be granted." *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (citation omitted). However, qualified immunity may "be asserted on a Rule 12(b)(6) motion as long as the defense is based on facts appearing on the face of the complaint[,]" *id.* at 436; or if it is based on facts of which the court may take judicial notice, *see Martin v. County of Nassau*, 692 F. Supp. 2d 282, 294 (E.D.N.Y. 2010) (citation omitted).

Here, Defendants are not entitled to qualified immunity at this early stage in the proceedings. They contend that "[t]here is no Second Circuit or Supreme Court decision clearly establishing that a towing company's complaints regarding being skipped in a municipality's towing rotation are protected under the First Amendment." *See* Dkt. No. 9-1 at 9. This contention disregards the fact that Plaintiffs' complaints were not only about being skipped in the tow rotation, but also about police misconduct and conflicts of interest within the police department. *See* Dkt. No. 1 at ¶¶ 30-35; *see also Frisenda v. Incorporated Village of Malverne*, 775 F. Supp. 2d. 486, 522-23 (E.D.N.Y. 2011) (citation omitted).

Based on the foregoing, the Court finds that the facts as alleged in the complaint simply do not support a grant of qualified immunity at this early stage in the proceedings. Accordingly, Defendants Cocozza, Corcoran, Pascale, and Eberhard are not entitled to qualified immunity.

**F.     Unjust Enrichment**

Plaintiffs allege that Defendant police officers, AA, and TLAC were all unjustly enriched at Plaintiffs' expense.[3] *See* Dkt. No. 1 at ¶¶ 56-60. They claim that Defendants received profits from towing that would have gone to Plaintiffs if the tow rotation had been followed. *See id.* Defendants counter that Plaintiffs did not confer a benefit on Defendants, and, therefore, Plaintiffs' unjust enrichment claim should be dismissed. *See* Dkt. No. 9-1 at 10.

"To prevail on a claim for unjust enrichment, the moving party must show that the defendant received money from or was otherwise enriched by the plaintiff to the defendant's benefit and, pursuant to principles of equity and good conscience, the defendant should not retain

---

[3] Plaintiffs did not name the Town of Marlborough in their unjust enrichment claim. The
Court takes no position as to whether this claim could be maintained against the Town.

what plaintiff seeks to recover." *Deutsche Asset Mgmt., Inc. v. Callaghan*, No. 01 Civ. 4426, 2004 WL 758303, *11 (S.D.N.Y. Apr. 7, 2004) (citing, *inter alia*, *Clark v. Daby*, 300 A.D.2d 732 (3d Dept. 2002)). "[C]laims for unjust enrichment seek restitution and are based upon theories of quasi-contract." *Deutsche Asset Mgmt.*, 2004 WL 758303, at *11 (citing *Matter of Estate of Witbeck*, 245 A.D.2d 848 (3d Dept. 1997)). "A quasi-contract is one implied by law, where none in fact exists." *Deutsche Asset Mgmt.*, 2004 WL 758303, at *11 (citing *James v. State*, 90 A.D.2d 342 (4th Dept. 1982)). Thus, quasi-contract relief is only available in the absence of an enforceable written contract which governs the same subject matter between the parties. *See Seiden Associates, Inc. v. ANC Holdings*, 754 F. Supp. 37, 39 (S.D.N.Y. 1991).

In the present action, Plaintiffs have failed to allege that Defendants received money from or were otherwise directly enriched by Plaintiffs. Plaintiffs allege that Defendants received profits from tow jobs that rightfully belonged to Plaintiffs, but this does not demonstrate that Defendants were directly enriched by Plaintiffs. The only benefit that Plaintiffs conferred on any of the named Defendants was paying the Town for a tow license, but neither the police officers nor the towing companies were directly enriched by this. *See* Dkt. No. 11 at 17.

As such, the Court grants Defendants' motion to dismiss Plaintiffs' unjust enrichment claim without prejudice. Although Absolutely Automotive, Absolutely Auto Body, and Town Line Auto Center did not join municipal Defendants in their motion to dismiss this claim, the Court *sua sponte* dismisses Plaintiffs' unjust enrichment claims against them as well.

**G.    Harassment**

It is well-settled law in this Circuit that "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Gill v. Hoadley,* 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003) (citing

*Alnutt v. Cleary*, 913 F. Supp. 160, 165-66 (W.D.N.Y. 1996)); *Petway v. City of New York*, No. 02-CV-2715, 2005 WL 2137805, *3 (E.D.N.Y. Sept. 2, 2005); *Larocco v. N.Y. City Dep't of Corr.*, No. 99 CIV. 9759, 2001 WL 1029044, *5 (S.D.N.Y. Aug. 31, 2001). Moreover, "[h]arassment is not a cognizable claim under New York State common law." *CBS Inc. v. Arcane Visuals, LTD.*, 156 Misc. 2d 665, 667 (N.Y. Civ. Ct. 1993); *Jerulee Co. v. Sanchez*, 43 A.D.3d 328, 329 (1st Dept. 2007) (citation omitted).

In light of the foregoing, the Court finds that Plaintiffs' claim that they were subjected to harassment is not cognizable in this action; and, therefore, the Court *sua sponte* dismisses this claim against all Defendants.

**H.     Tortious interference with prospective economic advantage**

Plaintiffs allege that the police officers, AA, and TLAC committed tortious interference with prospective economic advantage.[4] *See* Dkt. No. 1 at ¶¶ 66-72. Plaintiffs claim that Auto's by Joseph had a relationship with various vehicle owners, and that these Defendants interfered and caused harm to that relationship. *See id.* Defendants' primary contentions are that Plaintiffs have not identified any parties that they entered into a business relationship with, and that Defendants' conduct was not wrongful. *See* Dkt. No. 9-1 at 11.

"To state a claim for tortious interference with prospective economic advantage under New York law, a plaintiff must show (1) business relations with a third party; (2) defendants' interference with those business relations; (3) that defendants acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the

---

[4] Plaintiffs' complaint also named the Police Department in this cause of action, but all claims against the Police Department have been dismissed.

relationship." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417 (2d Cir. 2012) (citation omitted). "The defendant's interference must be direct: the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiff." *Kolchinsky v. Moody's Corp.*, No. 10 Civ. 6840(PAC), 2012 WL 639162, *6 (S.D.N.Y. Feb. 28, 2012) (quoting *B & M Linen, Corp. v. Kannegeisser, USA, Corp.*, 679 F. Supp. 2d 474, 485 (S.D.N.Y. 2010)). "[A]s a general rule, the defendant's conduct must amount to a crime or an independent tort. Conduct that is not criminal or tortious will generally be 'lawful' and thus insufficiently 'culpable' to create liability for interference with prospective contracts or other nonbinding economic relations." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004).

In the present action, Plaintiffs have sufficiently alleged the necessary elements of a tortious interference with prospective economic advantage claim. Although Defendants argue that Plaintiffs cannot identify a business relationship with a third party, Plaintiffs assert that during discovery they will be able to obtain the relevant information regarding each tow job that was taken from them. *See* Dkt. No. 11 at 18. Plaintiffs have also sufficiently alleged an injury because they would have received more tow jobs if Defendants did not interfere with their business by wrongfully giving tow jobs to Plaintiffs' competitors. *See id.* Similarly, Plaintiffs allege that Defendants used dishonest, unfair, or improper means to interfere with Plaintiffs' business relations. Specifically, Plaintiffs allege that Chief Cocozza and Sgt. Pascale used their cell phones instead of the towing dispatch to contact towing companies in an effort to circumvent Plaintiffs' turn in the rotation. *See* Dkt. No. 1 at ¶ 42. Defendants Cocozza and Pascale allegedly have personal interests in Plaintiffs' competitors, so violating the Code by giving AA more tow jobs for their own personal gain is certainly improper. *See id.* at ¶¶ 30-32. Moreover, Officer

16

Eberhard allegedly does not follow the tow law and even encouraged other officers not to follow it, which demonstrates that he also was improperly and unfairly preventing Plaintiffs from receiving their rightful tow jobs. *See id.* at ¶ 40.

In light of the foregoing, the Court denies Defendants' motion to dismiss Plaintiffs' tortious interference with prospective economic advantage claim.

**I.** *Prima Facie* **Tort**

Plaintiffs allege that all Defendants are liable for *prima facie* tort. Defendants argue that they did not act improperly toward Plaintiffs, and that Plaintiffs did not sufficiently identify any special damages, and, therefore, Plaintiffs' claim should be dismissed. *See* Dkt. No. 9-1 at 12.

"[T]he *prima facie* tort is aimed at providing relief for the intentional infliction of harm under circumstances that do not lend themselves to categorization as one of the traditional causes of action." *National Nutritional Foods Ass'n v. Whelan*, 492 F. Supp. 374, 382-83 (S.D.N.Y. 1980). To prevail on a *prima facie* tort claim, the plaintiff must show (1) intentional infliction of harm; (2) causing special damages; (3) without excuse or justification; (4) by an act or series of acts that would otherwise be lawful. *Curiano v. Suozzi*, 63 N.Y.2d 113, 117 (1984) (citations omitted). "[L]ost profits from a business venture are a prime example of consequential or special damages." *International Gateway Exchange, LLC v. Western Union Fin. Servs., Inc.*, 333 F. Supp. 2d 131, 149 (S.D.N.Y. 2004) (citation omitted).

At this early stage in the proceeding, Plaintiffs' allegations are sufficient to survive Defendants' motion to dismiss. Plaintiffs concede that they have not alleged a specific amount of special damages, but they contend that they will be able to identify a specific amount during discovery. *See* Dkt. No. 11 at 19. Since lost profits from business ventures are an example of

special damages, Plaintiffs have alleged that they suffered some amount of special damages because of the profits they lost from wrongfully being left out of the tow rotation. *See* Dkt. No. 1 at ¶¶ 77-81; *see also Diorio v. Ossining Union Free School Dist.*, 96 A.D.3d 710, 712 (2d Dept. 2012). Regarding Defendants' argument that their conduct was not improper or intentional, the alleged campaign to destroy Plaintiffs' business by Defendant police officers and Defendant Corcoran is an intentional infliction of harm upon Plaintiff without excuse.

As such, the Court denies Defendants' motion to dismiss Plaintiffs' *prima facie* tort claim.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**;[5] and the Court further

**ORDERS** that all claims against the Town of Marlborough Police Department and Building Department are **DISMISSED**; and the Court further

**ORDERS** that Plaintiffs' unjust enrichment claim is **DISMISSED** without prejudice; and the Court further

---

[5] As a result of this Memorandum-Decision and Order, Plaintiffs' remaining claims are their First Amendment retaliation claim against the Town of Marlborough and the individual Defendants; their tortious interference with prospective economic advantage claim against Defendant police officers, AA, and TLAC; and their *prima facie* tort claim against the Town, the individual Defendants, AA, and TLAC.

18

**ORDERS** that Plaintiffs' harassment claim is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 24, 2014
      Albany, New York

Mae A. D'Agostino
U.S. District Judge